# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANE BALLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-39-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Diane Ballard requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is herby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 15, 1959, and was fifty-four years old at the time of the administrative hearing (Tr. 203). She has a high school education and certified nursing assistant training, and has worked as a certified nurses' aide and kennel manager (Tr. 77, 223). The claimant alleges that she has been unable to work since an amended onset date of April 29, 2013, due to mood disorder, degenerative disc disease, anxiety, depression, insomnia, shoulder muscle spasms, nervousness, and problems concentrating (Tr. 65, 241).

## Procedural History

On May 4, 2013, the claimant filed her current application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 24, 2014 (Tr. 42-60). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform medium work as defined in 20 C.F.R. § 416.967(c), except that she was limited to frequent stooping and

crawling, and occasional contact with coworkers, supervisors, and the general public (Tr. 46). The ALJ further found the claimant could understand, remember, and manage most simple and more complex instructions and tasks; could adequately adjust socially and emotionally into most settings; and could perform goal-oriented work, but could not perform at a production rate (Tr. 46). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, janitor, laundry worker, and dining room attendant (Tr. 59-60).

## Review

The claimant contends that the ALJ erred by failing to: (i) account for her non-severe impairment of shoulder muscle spasms at steps four and five, (ii) perform a proper credibility determination, (iii) properly determine the mental and physical demands of her past relevant work, and (iv) apply the Medical-Vocational Guidelines (the "Grids") to find her disabled. The Court finds the claimant's second proposition persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of lumbar degenerative disc disease, early onset dysthymia, anxiety disorder not otherwise specified, and dependent personality traits, but that her alleged impairments of endometriosis and shoulder muscle spasms were non-severe (Tr. 15-18). The medical record as to her physical impairments reveals that physician assistants at Stigler Choctaw Health Clinic managed the claimant's pain medications (Tr. 289-343, 434-42, 464-535).

Physician assistant Gwen Hendrix's treatment notes from July 2009 through May 2011 reflect that the claimant's lumbar region was frequently tender to palpation, and that she had intermittent decreased range of motion in her back (Tr. 339-40, 477-512). Ms. Hendrix prescribed opioid and nonsteroidal anti-inflammatory pain medications through June 13, 2011, when she informed the claimant that she needed to obtain her pain medication from an outside provider (Tr. 338-43, 477-532). There are no treatment notes related to the claimant's back between August 2011 and January 2013 (Tr. 296-336). On June 12, 2013, Ms. Hendrix noted the claimant had decreased range of motion in her back, pain with all movement, and tenderness in her lumbar region (Tr. 440-41). She referred the claimant for a lumbar spine MRI, the results of which revealed a shallow, broad-based disc bulge with a small posterior disc protrusion at L1-2, but no central canal stenosis or neuroforaminal narrowing, and multi-level lower lumbar spine facet hypertrophy and ligamentum flavum thickening (Tr. 464-65). On November 21, 2013, Physician assistant Eddie Noel noted that the claimant's straight leg test was negative, and that she had no spasms in her lumbar area, but experienced discomfort with twisting (Tr. 438-39).

  Dr. Wojciech Dulowski performed a physical consultative examination on July 25, 2013 (Tr. 350-55). Dr. Dulowski found, *inter alia*, that the claimant had slight tenderness in her lumbosacral spine with full range of motion, paravertebral muscle spasms, slightly reduced range of motion in her cervical spine, and full range of motion in her upper and lower extremities (Tr. 355). His assessment related to the claimant's back was "history

of mechanical back pain, neurologically intact, secondary to small disc [sic] L1-L2." (Tr. 350-55).

On September 19, 2013, the claimant presented to Dr. Tracy Baker, who found no abnormalities on physical examination of the claimant's back and musculoskeletal system, but noted the claimant moaned with all movements, and appeared "to put out little effort on the . . . exam." (Tr. 538-40).

On February 11, 2014, the claimant established care with nurse practitioner Patricia Redhage, and requested a referral for physical therapy (Tr. 453-56). Ms. Redhage's physical examination revealed no abnormalities, but she did refer the claimant for physical therapy as requested (Tr. 455-56). At her physical therapy evaluation on March 6, 2014, the claimant reported back pain that began four years earlier and progressed over the previous year such that she was unable to work or maintain her home without extreme pain (Tr. 429-32). Physical therapist Bryson Harris found the claimant's lumbar spine was tender to palpation with decreased range of motion and strength, instructed her on a home exercise program, and recommended once weekly clinic sessions for one month (Tr. 430-32). At her first physical therapy session on March 11, 2014, the claimant reported that she performed the home exercises as instructed without any increase in pain, was feeling better, and had no pain (Tr. 426-27). At her second physical therapy session on April 1, 2014, the claimant reported the home exercise program increased her pain, and Mr. Harris discharged her due to intolerance and lack of progression (Tr. 420-23).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 416-442). She stated she could recline for a "couple of hours," but needed to move some because she gets stiff while sitting, could walk a block, and could stand for thirty minutes (Tr. 69-70). As to her pain, the claimant stated her medications were not fully effective, and that bending and stooping exacerbated her pain (Tr. 72-73).

In his written decision, the ALJ extensively summarized the medical evidence, including the claimant's hearing testimony, and a Third Party Function Report submitted by her mother. At step two, he discussed the claimant's impairments, explaining those he deemed severe and those he deemed non-severe (Tr. 44). In determining the claimant's shoulder muscle spasms were non-severe, the ALJ noted that they were infrequently/intermittently mentioned in the record, and that the claimant had full range of motion in her shoulders (Tr. 44). At step four, he mentioned each of the claimant's alleged impairments, her testimony, and the medical evidence related to her impairments, and found the claimant not entirely credible (Tr. 47-58). He then found the claimant not disabled at step five (Tr. 59-60).

The claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's

symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 2nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.